# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DEAVON KAYSER,**

    **Plaintiff,**

v.                                                                       No. 16-cv-0978 SMV

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 22] ("Motion"), filed on May 4, 2017. The Commissioner responded on June 28, 2017. [Doc. 23]. Plaintiff replied on July 14, 2017. [Doc. 24]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 32]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and her decision is supported by substantial evidence. Accordingly, the Motion will be denied, and Commissioner's final decision, affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---
[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Processes**

In order to qualify for disability benefits, an *adult* claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A *child* claimant, however, must establish that he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. § 416.906.

When considering a disability application for an *adult*, the Commissioner is required to use a five-step sequential evaluation process ("SEP"). 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that

the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Id.*

The "test for determining whether a *child* claimant is disabled is an abbreviated version of the adult [5-step SEP]." *Sullivan v. Zebley*, 493 U.S. 521, 526 (1990). Rather than five steps, the ALJ uses three steps, the first two of which mirror the first two adult steps. *See id.* A child under 18 years of age is "disabled" and eligible for SSI benefits if the child (1) is not doing substantial gainful activity; (2) has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the Listings for disability at 20 C.F.R. Part 404, Subpart P, Appendix 1, and otherwise meets the applicable duration requirement. 20 C.F.R. § 416.924(a)–(d); *see also id.* § 416.906 (specifying duration requirement). A child's impairment or combination of impairments functionally equals the listings and, thus, constitutes a disability, when it results in "marked" limitations in two domains or an "extreme" limitation in one domain, as described in 20 C.F.R. § 416.926a. The Commissioner assesses how a child functions "'in terms of six domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [ones]self; and, (vi) Health and physical well-being.'" *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1238 (10th Cir. 2001) (footnote omitted) (quoting 20 C.F.R. § 416.926a(b)(1)(i)–(vi)).

**Procedural Background**

An application for supplemental security income ("SSI") was filed on Plaintiff's behalf—because he was under 18 years of age[3]—on June 30, 2011. Tr. 10. His claim was denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Charlotte A. Wright held a hearing on January 8, 2015, in Albuquerque, New Mexico. Tr. 10, 32. Plaintiff and his mother, Shanna Marie Kayser, appeared in person, along with Plaintiff's attorney. Tr. 10, 32. The ALJ took testimony from Plaintiff, Ms. Kayser, and an impartial vocational expert ("VE"), Leslie J. White. Tr. 10, 32−72.

The ALJ issued her unfavorable decision on March 30, 2015. Tr. 25. At step one of the child SEP, the ALJ found that Plaintiff had never engaged in substantial, gainful activity. Tr. 14. Next, at step two she found that Plaintiff suffered from one severe impairment: hypohidrotic ectodermal dysplasia ("HED"). Tr. 15. She further found that Plaintiff's personality disorder-intellectual impairment (diagnosed by the consultative examiner), asthma, and his eye/vision problems were not severe. Tr. 15–16.

At step three of the child SEP, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 17. She further found that Plaintiff's impairments, alone or combination, failed to functionally equal a Listing. *Id.* at 17–23. Accordingly, the ALJ found that before attaining age 18, Plaintiff was not disabled. *Id.* at 23.

Having determined that Plaintiff was not disabled before he turned 18, the ALJ proceeded with the remaining adult SEP steps. At step two, the ALJ found that Plaintiff had no

---

[3] Plaintiff was born on April 28, 1996, Tr. 37, and, therefore, he turned 18 years old on April 28, 2014.

new severe impairments since turning 18 years old. *Id.* She further found at step three that Plaintiff had no impairment or combination of impairments that met or medically equaled a Listing. *Id.* Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 23–24.

> [S]ince attaining age 18, [Plaintiff] has had the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967(b). He can occasionally lift/carry 20 pounds, 10 pounds frequently. He can sit, stand[,] and walk six hours in an eight-hour workday. He can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs but not ladders, ropes[,] or scaffolds. He has to work in an air condition[ed] environment with available water-fountain or water supply.

*Id.*

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 24. Accordingly, she proceeded to step five, where she relied on testimony by the VE to find that, based on Plaintiff's age, education, work experience, and RFC, he was capable of performing other jobs that exist in significant numbers in the national economy. Tr. 24–25.

Ultimately, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act, and she denied the claim. Tr. 25. The Appeals Council denied Plaintiff's request for review on June 26, 2016. Tr. 1−4. Plaintiff timely filed the instant action on September 1, 2016. [Doc. 1].

## Analysis

Plaintiff fails to show reversible error in the ALJ's credibility analysis or in the evaluation of the reports from his teachers. Substantial evidence supports the ALJ's decision,

6

and the correct legal standards were applied. To the extent that there was any error in evaluating the teachers' reports, it was harmless. Accordingly, remand is not appropriate.

<u>Plaintiff fails to show reversible error in the evaluation of his credibility.</u>

Social Security Ruling ("SSR") 96-7p requires ALJs to "make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects. . . . It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" 1996 SSR LEXIS 4, at *2–3.[4] Specifically, in evaluating the credibility of a claimant's subjective complaints, the ALJ follows the steps outlined in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). First, accepting the subjective allegations as true, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the alleged [symptoms]." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's [symptoms are] in fact disabling." *Luna*, 834 F.2d at 163; *see* SSR 96-7p, 1996 WL 374186, at *2. The ALJ must consider "the medical data previously presented, any other objective indications of the degree of [the symptoms], and subjective accounts of the severity" in determining whether the ALJ believes the claimant.

---

[4] SSR 96-7p was superseded on March 29, 2016 (after the Commissioner's decision became final and after the action was already pending in this Court), by SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." 2016 SSR LEXIS 4, at *1, 2016 WL 1119029, at *1. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). The new Ruling, however, does not appear to be a policy change but, rather, a clarification. As to the issues raised in this appeal, the Court sees no material difference between the Rulings. The Court's analysis of Plaintiff's argument is the same under either Ruling. Thus, the rescission of SSR 96-7p and issuance of SSR 16-3, alone, does not warrant remand.

*Luna*, 834 F.2d at 163. That is, the ALJ must assess the credibility of the claimant's assertions of pain or other symptoms. *Id.*

The district court cannot re-weigh the evidence. It can only review an ALJ's decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs need not discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

Here, the ALJ explicitly acknowledged Plaintiff's asserted limitations, including that he needs to take breaks every 30 minutes. Tr. 17. She found that his impairments could reasonably be expected to cause some of the symptoms he reports. Tr. 19, 24. Nevertheless, she also found that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. *Id.* She made several specific findings pertinent to the credibility determination:

> Despite being born[] without sweat glands, [Plaintiff] is capable of outdoor sports such as hunting and fishing. He runs trac[k] and plays football at school. He does weight lifting. He is able to prepare his food and perform household chores. He

8

> drives. He shops. He plays video games and sporting games in school and out.
>
> . . . .
>
> [Plaintiff] was on the track and field team in school despite having no sweat glands—he was able to compete. He played football as well.
>
> . . . .
>
>
> . . . . As an adult, he does not seek ongoing medical attention.
>
> [Regarding Plaintiff's credibility,] his allegations appeared inconsistent with his activities of daily living. He is able to ride a 4-wheeler, fish and hunt. He lifts weights for exercise. He testified he has looked for work and placed applications for jobs on . . . social media.

Tr. 19, 22, 24 (internal citations omitted).

Here, Plaintiff's sole complaint about the credibility determination is that the ALJ did not accept Plaintiff's report that he requires breaks every 30 minutes to avoid overheating regardless of his level of exertion and regardless of his environmental surroundings. [Doc. 22] at 24 (citing Tr. 57); [Doc. 24] at 6. The ALJ included in the RFC requirements that Plaintiff work in an air conditioned environment with available water supply. Tr. 24. Plaintiff argues that these are inadequate. Plaintiff insists that regardless of exertion level or environment, he must take breaks every 30 minutes to avoid overheating. [Doc. 22] at 24; [Doc. 24] at 6. Plaintiff urges that the testimony and the medical records as a whole are consistent with his reported need to take breaks every 30 minutes, and therefore, the ALJ should have accepted the limitation. [Doc. 22] at 24; [Doc. 24] at 6. The Court is not persuaded.

9

The ALJ explicitly made the required *Luna* findings. She found that Plaintiff's impairments could cause some of the symptoms he reports, but his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 19, 24. As quoted above, the ALJ gave reasons for her credibility determination, which are closely and affirmatively linked to substantial evidence. *See* Tr. 19, 22, 24. Plaintiff fails to show reversible error in the ALJ's credibility determination.

<u>Plaintiff fails to show reversible error in the evaluation of his teachers' reports.</u>

Plaintiff challenges the ALJ's determination that he was not disabled prior to age 18 based on the ALJ's evaluation of the reports of his teachers, Ms. Clarke, Ms. Waid, and Ms. Page. [Doc. 22] at 16–23; Tr. 308–10 (Ms. Clarke's report); Tr. 214–21 (Ms. Waid's Teacher Questionnaire[5]); Tr. 264–71 (Ms. Page's Teacher Questionnaire). Ms. Clarke assessed extreme limitations in the domains of "Attending and Completing Tasks" and "Health and Physical Well-Being" and moderate limitation in the domain of "Moving About and Manipulating Objects." Tr. 308–10. In their Teacher Questionnaires, Ms. Waid and Ms. Page, however, gave no opinions about Plaintiff's level of limitation in any domain (unless the opinion was no limitation at all). Instead, Ms. Waid and Ms. Page rated the severity of Plaintiff's problems in numerous individual activities within each domain. Tr. 214–21 (Ms. Waid's Teacher Questionnaire); Tr. 264–71 (Ms. Page's Teacher Questionnaire).

In the domain of Attending and Completing Tasks, Ms. Waid assessed thirteen individual activities. On the one-to-five scale (with one being "no problem" and five being "a

---

[5] The Teacher Questionnaire found at Tr. 214–21 itself does not identify its author. Plaintiff represents that it was completed by Ms. Waid, and Defendant does not dispute this. Accordingly, the Court refers to the documents as Ms. Waid's.

very serious problem"), she rated one area at level four, and no areas at level five. Tr. 216. She explained, "[Plaintiff] works well with [his aide]. He can be easily distracted by some other students and outburst verbally if others do. He seems to be seeking attention from peers with this behavior. He is always respectful of me." *Id.* In all other domains, Ms. Waid either found no problem at all or found no more than level-three severity in the corresponding activities. Tr. 214–21.

As did Ms. Waid, Ms. Page also assessed thirteen individual activities within the domain of Attending and Completing Tasks. Tr. 266. She assessed two activities at level-five severity[6] and none at level four. She explained "[Plaintiff] has support of an [aide] in general ed. classes, there to give support to him and other sp[ecial ]ed students. [Plaintiff] is often off[-]task." *Id.* In all other domains, Ms. Page either found no problem at all or found no more than level-two severity in the corresponding activities. Tr. 264–71.

Plaintiff argues that the ALJ failed to consider and/or failed to make the requisite findings regarding his teachers' reports. *Id.* Specifically, Plaintiff argues that the ALJ failed to give adequate reasons for rejecting Ms. Clarke's opinion. *Id.* at 16–19. Next, he argues that the ALJ failed to discuss Ms. Waid's opinion at all. *Id.* at 19–20. Plaintiff further argues that the ALJ erred in rejecting certain of Ms. Page's opinions without explaining why, especially because the ALJ purported to give great weight to Ms. Page's opinion. *Id.* at 20–23.

---

[6] In one of these two activities, Ms. Page actually marked both level two and level five. Tr. 266.

Plaintiff argues that if the ALJ had properly evaluated his teachers' reports, she would have found a more severe limitation in attending and completing tasks.[7] An "extreme" limitation in one childhood domain or "marked" limitations in any two domains would render Plaintiff disabled prior to his 18th birthday. [Doc. 22] at 19, 22; *see* 20 C.F.R. §§ 416.924(a); 416.926a(a), (d), (e)(2)(i). The teachers' reports matter because, Plaintiff argues, they could support an extreme limitation in the domain of Attending and Completing Tasks, rendering him disabled. Or, he argues, Ms. Clarke's report could support marked limitations in the domains of Health and Physical Well-Being and Attending and Completing Tasks, likewise rendering him disabled. [Doc. 22] at 17–23.

The ALJ expressly gave no weight to Ms. Clarke's report because it "vastly differ[ed] from [the opinions of the] examining physicians." Tr. 19. If read in a vacuum, the Court might be persuaded by Plaintiff's argument that this reason is inadequate. Without the benefit of the entire record, the ALJ's stated reason for rejecting Ms. Clarke's report could seem conclusory and vague, as Plaintiff argues. *See* [Doc. 22] at 17. Considering the record in this case, however, the finding makes sense and is adequate.

The examining physicians referenced by the ALJ are Dr. Ward and Dr. Loescher. Plaintiff was evaluated by Em Ward, M.D., on April 10, 2012, just before his 16th birthday. Dr. Ward diagnosed HED, asthma, and elevated blood pressure. Tr. 415. In pertinent part, Dr. Ward opined that:

> Future work restriction for [Plaintiff] would be avoiding
> strenuous activity in a warm environment without access to

---

[7] The ALJ had found a less than marked limitation in attending and completing tasks. Tr. 20. The ALJ explained that "[Plaintiff] has been known to be off[-]task[] but has no diagnostic finding of attention disorder." *Id.*

> cooling measures. Sedentary work in a hot environment could be problematic without cooling measures. Potential cooling measures could include spray bottle of water or cold packs or shade and fanning, depending on the situation. He would also need to maintain hydration with cool liquids. [Dr. Ward] would not anticipate a problem with overheating in an air-conditioned environment (depending on activity level). With appropriate vigilance, HED kids may participate in a variety of sports.

Tr. 415.

The examining psychologist, Dr. Loescher, had examined Plaintiff a few weeks prior, on February 22, 2012. Dr. Loescher noted that Plaintiff was on an Individual Education Plan ("IEP") at school because he "gets easily distracted. He is being served as a student with Other Health Impairment because of his [HED]. He does not have a diagnosis of ADHD." Tr. 404. Dr. Loescher found that "there are no psychological or social problems reported that are secondary to his [HED]. . . . He is reported to have difficulties with distractibility but he does not have a diagnosis of an attention disorder." Tr. 405. Ultimately, Dr. Loescher opined that Plaintiff had no diagnoses, other than his HED. She gave no Axis I diagnosis (clinical disorder) and no Axis II diagnosis (personality disorder or intellectual impairment). She assessed his Global Assessment of Functioning ("GAF") score as 70. Tr. 406.

Substantial evidence supports the ALJ's conclusion that Ms. Clarke's report "vastly differ[s]" from the opinions of the examining doctors. Ms. Clarke's assessments of extreme limitations in the domains of "Attending and Completing Tasks" and "Health and Physical Well-Being" and moderate limitation in the domain of "Moving About and Manipulating Objects" are flatly contradicted by the examining doctors' reports. On this administrative record, Plaintiff fails to show reversible error in the ALJ's rejection of Ms. Clarke's report.

13

As to Ms. Waid's report, Plaintiff is correct that the ALJ failed to mention the report in the body of the decision. However, the ALJ said she considered all of the evidence. Tr. 11. The Court takes her at her word. Additionally, the list of exhibits attached to the ALJ's decision explicitly references the Teacher Questionnaire that Plaintiff identifies as Ms. Waid's. Tr. 28 (listing "Teacher Questionnaire" from Mountainair High School at Exhibit 5E).

As to Ms. Page's report, the Court disagrees that the ALJ impermissibly picked and chose from her opinion without explanation. *See* [Doc. 22] at 20–23. Under the circumstances of this case, Plaintiff fails to show that Ms. Page's assessment (of thirteen activities in the domain of attending and completing tasks) is inconsistent with the ALJ's findings. *Compare* Tr. 266 (Ms. Page's assessment), *with* Tr. 20 (ALJ's finding). POMS § DI 25205.030(B)(5)(c) ("There is no formula for converting the teacher's different intensity and frequency ratings for multiple activities into a single domain rating, or into a rating of an adult's RFC for various kinds of work."). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (holding alleged error was harmless because the ALJ's RFC determination was "generally consistent" with the physician's findings).

Moreover, the Court finds that if there had been any error in evaluating the teachers' reports, i.e., in crediting the teachers' assessments of distractibility, such error was harmless for two reasons. First, the ALJ's findings regarding Plaintiff's medically determinable impairments conclusively preclude a more severe limitation in attending and completing tasks. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (applying the harmless error standard where an ALJ failed to make explicit findings at step three of the adult SEP but

14

findings elsewhere in the decision "conclusively negated" the plaintiff's claim at step three). The ALJ found that Plaintiff suffered from HED, asthma, and eye problems and, explicitly, that he had "no diagnostic finding of attention disorder." Tr. 20, *see* Tr. 15–17. Without any finding of a medically determinable impairment that could cause the limitations in attending and concentrating, such limitations cannot support a determination of disability. *See* 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. § 416.906.

Assuming *arguendo* that there had been an error in evaluating the teachers' reports, i.e., in crediting the teachers' assessments of distractibility, such error was harmless for a second reason. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding harmless error when we can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). The crux of Plaintiff's challenge is that the teachers' reports could support a finding of extreme limitation in the domain of Attending and Completing Tasks. [Doc. 22] at 17–23. But the reports cannot support such a finding. A claimant's functional limitation must result from a medically determinable impairment. 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. § 416.906. Limitations on their own cannot sustain a claim for benefits. SSR 09-8p, 2009 SSR LEXIS 8, at *9 ("[W]e do not consider a limitation in [any] domain . . . unless it results from a medically determinable impairment(s)."). In this case, there is no evidence of record that the limitations in concentration assessed by the teachers result from a medically determinable impairment. In fact, the evidence in this record is consistent that Plaintiff suffers from HED, asthma, and eye problems. There is no objective medical evidence suggesting that Plaintiff's HED, asthma, or

15

eye problems could cause the attention limitations assessed by the teachers. Moreover, there is no medical evidence suggesting that Plaintiff suffers from any other medically determinable impairment that could cause the attention limitations assessed by the teachers. Dr. Loescher, the only medical source to speak to the issue, affirmatively found that "there are no psychological or social problems reported that are secondary to his [HED]," and she found no Axis I or Axis II diagnosis. Tr. 405, 406. Thus, even if the ALJ had failed to properly evaluate the teachers' reports, the Court finds that no reasonable administrative factfinder, following the correct analysis, could have found a more restrictive limitation in attending and completing tasks than the ALJ found. Therefore, any error in evaluating the teachers' reports is harmless. Remand is not appropriate.

## Conclusion

Plaintiff fails to show reversible error in the ALJ's credibility analysis or in the evaluation of the reports from his teachers. Substantial evidence supports the ALJ's decision, and the correct legal standards were applied. To the extent that there was any error in evaluating the teachers' reports, it was harmless. Accordingly, remand is not appropriate.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 22] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**